Tilghman O. J.
Two questions arise on the record. 1. "Was Phineas Bond a competent witness? 2. Was the evidence produced by the plaintiff sufficient to support his action ?
1. As to the first, little more is necessary than to state the case. The action vpas brought by the treasurer of Lycoming county, for a sum of money, which was due for taxes from Phineas Bond and others, and which the plaintiff alleges was received from Phineas Bond for his use to be applied to the discharge of the taxes. Phineas Bond was offered as a witness to prove that he had paid the taxes to the defendant to be paid over by him to the treasurer. The rule laid down in Peake’s Law of Evidence is accurate. No objection can be made to a witness on the ground of interest, unless he be directly interested, that is, unless he may, be immediately benefited or injured by the event of the suit, or unless the verdict to be obtained by his evidence, or given against it, will be evidence for or against him in another action, in which he may afterwards be a party. Tbe common question proposed to the witness, o'n the voir ¿Lire, is, whether he is to gain or lose by the event of the cause. Now Mr. Bond’s testimony tended immediately to discharge him from his taxes, for if the treasurer recovered of the defendant, the taxes would be paid by the defendant, to which Mr. Bond would otherwise be liable. And if a suit should afterwards have been brought, respecting those taxes, this verdict might be given in evidence by Mr. Bond, to prove that the treasurer of Lycoming cotinty had recovered them. Very clearly therefore Mr. Bond was not a competent witness.
2. Before the merits of the second question are *considered, it is necessary to get rid of an objection, which is but formal. It has been said, that the Court of Common Pleas had no right to order a nonsuit, but should have left it to be decided by the jury under their charge. It is very true that the plaintiff has a right to insist on a verdict, if he chooses it, aud so the law has been several times declared by this Court. So the plaintiff might have insisted on a verdict in this case. But it does not appear that he desired it. He only asked the President of the Court of Common Pleas to give his opinion in writing, to be placed on the record, in order that the points of law arising on it, might be examined on a writ of error. He did not object to a verdict’s not being taken, but to the opinion of the court, that in point of law the evidence did not support the action. This is the fair state of the matter as it appears on the record, and therefore I think we have only to consider, *78 whether the opinion of the court was or was not erroneous. To that consideration I shall now proceed.
There was sufficient evidence that the defendant received the money, for the purpose of paying it to Robert M’Clure the then treasurer. The question is not, whether M’Clure might have supported an action, but whether, on an implied, or even an express promise by the defendant to M’Clure, an action can be supported by the plaintiff his successor in office, to whom there was no evidence of any direct promise. If he can, it must be by virtue of some act of assembly; for at common law, the treasurer is not a body politic, from whom a right of action can be transmitted to his successor in office. But no act of assembly has been shown, constituting such a body politic. By the act of 11th April 1799, it is enacted that a treasurer for each county shall be chosen annually, and that it shall be his duty to receive all moneys due and accruing to the county by or in consequence of the said act or otherwise. But suppose the money due to the county is not paid to the treasurer voluntarily, is he to bring suit for it ? By no means. The collectors in each county are to enforce payment by distress and sale of personal property, and if recourse is had to land, the commissioners are the persons who are to direct the sale. The treasurer is authorized by the 17th section to bring suits for fines and forfeitures, and recover them for the use of the count3h an(l these are the *only objects entrusted to his collection. A power in the treasurer, to bring suits for all money due to the county, is not only unauthorized by the act of assembly, but inconsistent with the whole system for the collection of the taxes. Why should the county be put to the expense and hazard of the present action, when there was a sure remedy by resorting to the lands of Mr. Bond, which remained liable to the taxes, because he had made no payment either to M’Clure the then treasurer, or to any person authorized by him to receive the money. If M’Clure had thought proper to ratify the payment made to Grier, aud to charge himself with so much received on account of taxes, he might then have supported an action against Grier; but this action must have been brought in his private capacity, for he had no right to involve the county in the controversy. If he did not think proper to ratify the payment, an action would have lain for Mr. Bond against Grier, to recover back the money thus improperly withheld. Upon the whole, I can see no foundation for the support of an action by the treasurer of a county, on an assumption made to his predecessor in office, in a case like the present. I am therefore *79 of opinion, that there was no error in the judgment of the Court of Common Pleas, when they declared that the plaintiff had not produced sufficient evidence to support his action.
Yeates J.
I feel every disposition as a man, to support the present suit; but as a judge, governed by known law, I find it wholly out of m3' power. The deposition of Mr. Bond could not have been received in evidence. He was immediately interested in the event of the suit; and a verdict given for the plaintiff in this cause, would have been admissible evidence in his favor, in any suit wherein the payment of his taxes might be brought in question.
The testimony of John M’Means does not establish any promise made by the defendant to pay the taxes to Mr. Hayes the plaintiff. The county treasurers are not a body corporate known to the law; and the declaration states the special assumpsit made to Robert M’Clure as treasurer, and his successor in office. If Mr. M’Clure had when treasurer charged himself with these taxes, then under the circumstances of the case, he might have maintained an action ^against the defendant to recover the money he had received for his individual use. But there is no privity between M’Clure and Ha3'es. No law authorizes a treasurer to bring a suit for outstanding taxes; and the arguments grounded on the fourteenth and seventeenth sections of the act of lltb April 1799, and the first section of the act of 9th April 1799, instead of establishing the general authority of a county treasurer to sue, show the necessity of a legal provision’to maintain a suit as treasurer in any instance. At the same time that I declare that the judgment of the Court of Common Pleas should be affirmed, I feel it to be my duty to declare, that Mr. Bond might well maintain a suit against the defendant, for not paying over the money agreeably to the trust reposed in him. His conduct in the present instance can neither be justified nor palliated.
Brackenridge J.
The facts of this case, are, that the lands of Phineas Bond in Lycoming county being liable for taxes, Bond remits money by the hand of the defendant, to be paid to the treasurer of that county, in discharge of the tax upon his lands. A certain M’Clure was treasurer at that time, and had a right to receive the taxes, by virtue of his office. But Hayes was in office, the money not being paid over by the defendant to the predecessor, and had a right to receive the money as successor, and could have given a *80 receipt; and his receipt would have been good to the commissioners of the county, and would have discharged the lands. It is quá treasurer that the suit is now brought by Hayes the successor of M’Olure, and the assumpsit is laid to be to the treasurer.
It will not be doubted but that Phineas Bond could have sustained a suit to recover this money that had not been paid over according to its destination. What more does he do than use the name of the treasurer in bringing this suit ? It is not said, Hayes, for the use of Phineas Bond ; but such indorsement on the writ, is never made but for the purpose of notice who the real plaintiff is, to hinder a discontinuance, and to render liable for costs.
The treasurer could have called upon the defendant for the money that had been paid into his hands; and in '^contemplation of law, he is supposed to have called upon him ; though I hold it, that had he never called upon him, it being the duty of the defendant to have paid over the money, he could have brought suit; and the assumpsit refers to the act of receiving it for the purpose of its destination. It is on this assumpsit in law that the treasurer now calls legally by a suit for that money. The declaration states the capacity in which he calls; and the assumpsit laid to have been made to the treasurer, is but a fiction of the defendant having promised to do what he ought to have done. And who can say that he ought not to have paid the money to the treasurer for the time being. The judge below seems to have taken a distinction between a special assumpsit to an official treasurer, and an implied one. In receiving the money he assumed to pay to M’Clure the then treasurer; but it was to the treasurer. If M’Clure in the mean time had ceased to be treasurer, it could not affect the substance of the assumpsit. It was to the treasurer the money was to be paid.
The commissioners have no right to call upon the defendant for this money. He was not bound to know them. It was to the treasurer he undertook to pay. The commissioners have no right to receive money. They have not given security for this purpose. They could not bring suit: the treasurer only. The acts of assembly authorize him to receive. 11th April 1799, sec. 14. “It shall be the duty of the treasurer to receive all moneys due and accruing to the county, by or in consequence of this act or otherwise.” This act is entitled “ An act to raise county rates and levies.” By sec. 13, it is made the duty of the commissioners to take bond of the treasurer; a condition of which is, that “ he *81 shall deliver to his successor in office, all books of entry, papers, documents, and other things which he may have, or hold in right thereof, and pay him the balance of all moneys due to the county.”
I make use of this only to show that the treasurer is a political person, and the individual John, James, or Thomas is not looked at. Hayes becomes M’Olure, so as to be the promissee, on his succeeding to the office of treasurer. It is immaterial whose name is used, provided it is a person whom the law intrusts to receive, and whose receipt would *be good. What is it but a matter of astutia, to support form for the sake of substance? The action for money had and received, with the assumpsit laid, is but a fiction. It takes the place of a bill in equity, stating the fact and the obligation to refund or pay over. The money was in the hand of Grier, for him who had a right to receive. Hayes had a right to receive it. It was received by Grier for the immediate use of the treasurer, and the ultimate use of Bond, and a suit might be brought in the name of either. The only question that can remain then will be, does the evidence support the demand ?
The evidence of Phineas Bond was properly overruled, having a direct interest. But there would appear evidence without it, sufficient to go to the jury. There is the advice to Bond by his agent in favor of Grier, for the monej’", specifying the purpose to be for the payment of taxes : and there is the receipt of Grier to Bond for the money, referring to the purpose specified. And if any more was necessary, there is the acknowledgment to M’Meansof having received this money, and even a promise to pay it over; though after-wards some prevarication with regard to this, or qualification, alleging accounts with the agent.
I should think it hard, that under these circumstances, Bond should be turned round to another action in his own name, when in fact this is for his use. It can answer no end but to accumulate costs, and delay justice. The case might be that the statute of limitations might intervene; and I look to this, when thinking of the principle. I am therefore of opinion that the judgment of nonsuit be set aside, and a new trial awarded.
Judgment affirmed.
[Cited in 2 S. 355.]